**HC LIUFAU for himself and members of the LIUFAU FAMILY,
Plaintiffs**

**v.**

**TC TUFAGA OF AUA and TAGISIAALII FAUMUINA,
Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 07-03
LT No. 23-90
LT No. 1418-74
LT No. 1412-74

November 10, 2003

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Marie A. Lafaele
For Defendants, Asaua Fuimaono

# OPINION AND ORDER

## **Historical Background**

This is an enduring dispute, spanning generations, between the Liufau family and the Tufaga family of Aua over an area of land in the village bisected by the main east-west highway. The disputed area is claimed by the former as being a part of land· "*Leasi*," communal property of the Liufau family, while the Tufaga family claims it as being a part of "*Feagai*," communal property of the Tufaga family.

### 1. *1903 Litigation*

The parties' respective predecessors were earlier before the court in 1903 when Tufaga Fa`aso`oso`o and two other matai of Aua village filed suit against Liufau Mativa "claiming ownership to six pieces of land situated in the village of Aua and held in possession of Liufau Mativa of the same place." *Tufaga v. Liufau*, 1 A.S.R. 184, 185 (Trial Div. 1909) (hereafter the "1903 case"). Unfortunately for posterity, "[n]o plans were filed but the names of the different pieces [of land] were given as Vaitulitai, Vaituliuta, *Leasi*, Alele, Lesolo, and Taufusi." *Id.* (emphasis provided). Although the 1903 case was decided in favor of the Liufau family, we have today, exactly 100 years later, a quarrel between the parties over the physical location of *Leasi*. This location dispute has been pending since 1973.

### 2. *Post-1903*

From files with the Clerk's office, we find that the parties' predecessors had apparently managed to coexist harmoniously until Tufaga Faafua ("Faafua") offered a Separation Agreement in May 1972 on land he claimed as "*Matautu-Feagai*." Liufau Unutoa Sonoma ("Unutoa") objected claiming that Faafua had encroached on the Liufau family land *Leasi*. The dispute was referred to the Land and Titles Division and given the docket number LT No. 1279-72.

Apparently, while this Separation Agreement matter was pending, Unutoa commissioned a survey of the area, calling it *Leasi*, which he offered for registration as the communal property of the Liufau family on November 15, 1973. Evidently, nobody objected to Unutoa's offer and, consequently, he filed an application with the Land and Titles Division to register his offer. *See In re Land Leasi*, LT No. 1412-74.

Then, on January 10, 1974, Tufaga also offered for registration his surveyed claim of the land, calling it "Feagai," and claiming it as his family's communal land. The result was overlapping surveys before the

Territorial Registrar. Tufaga's offer, however, was timely objected to by Unutoa who claimed that Tufaga's survey encroached on his family's land *Leasi*. This dispute was also referred to the Land and Titles Division. *See Liufau v. Tufaga*, LT No. 1418-74. These matters were eventually consolidated.

We next see that the American Samoa Government ("ASG") intervened to, as it turns out, mistakenly claim an interest in the shoreline area on the seaward side of the road depicted in both Unutoa's and Faafua's respective surveys. Nonetheless, the Court, because of ASG's claim,[3] denied both the Liufau and Tufaga families' registration offers, as well as Tufaga's Separation Agreement offer, finding that neither party had proven "a clear right to the entire tract offered." *Liufau v. Tufaga*, LT Nos. 1279-72, 1412-74, 1418-74, slip op. at 2 (Land & Titles Div. Dec. 30, 1976).

Following this, both Unutoa and Faafua filed new trial motions; however, while these motions were pending, ASG discovered its mistaken assertion of ownership to the disputed area and moved, ironically on April 1, 1977, to withdraw "on the ground that subsequent evidence . . . has come to our attention clearly indicat[ing] the Government has no interest, except a right of way easement, on the land in question." The motion was granted and with ASG out of the case, the remaining parties Unutoa and Faafua stipulated in open court on February 6, 1978, "to reopen" the registration matters. These matters have since languished and remained pending.

In 1990, a Tufaga family member, Tagisiaalii Faumuina, began bulldozing inside the disputed area. This action in turn spawned yet another file with the Clerk's office, *see Liufau v. Tufaga*, LT No. 23-90. This case resulted in a preliminary injunction against both families from

---

[3] The claim was apparently based on A.S.C.A. § 37.2050, which reads:
> The public highway declared and proclaimed by Regulations No. 15 and No. 16, 1900, enacted 3 September 1900 by B.F. Tilley, Commander, U.S.N., Commandant, and amended by W. Evans, Captain, U.S.N., on 10 May 1921, extending from Blunt's Point on the southern side of Pago Harbor, toward Observatory Point and around the harbor to Breaker's Point on the northern side of the harbor, along the shore at highwater mark, of a uniform width of 15 feet distant inland from the shore, the land included in the description being condemned and appropriated for public uses, is recognized as a public highway, and the rights of the government and public thereto is asserted.

The government later discovered that the government road had, since the condemnation action, been moved some distance inland. Thus it had asserted a claim to land that was not subject to the condemnation statute.

any further activity on the disputed land. However, Unutoa passed away that same year and LT No. 23-90 was forgotten until a new generation of family members, as well as another succession of legal advisers, entered the picture. Shortly after Unutoa's death, Faafua's successor Tufaga Tavita ("Tavita"), commissioned yet another, and enlarged, survey of *Feagai* (the "1990 survey"). This time, the survey separately described the area seaward of the highway that ASG had once claimed and subsequently withdrawn from. This 1990 survey was also offered by Tavita for registration, and this offer was objected to by a Liufau family member, Fagamalama Liufau Fuaalau, on behalf of the Liufau family. This new dispute eventually found its way to the Land and Titles Division on April 16, 2003, and was assigned the docket number LT No. 07-03. In the meantime, Unutoa's son Tanielu had, in 1999, succeeded his father to the Liufau title, while the Tufaga title, left vacant with the passing of Tavita, was succeeded by the present Tufaga Sapati.

These matters finally came to the forefront again after the incumbent Liufau began to build earlier this year within the disputed land area. Following a show cause hearing, Liufau stipulated to stopping his construction work pending final disposition by the Court, and these matters were placed for expedited trial.

Trial was held August 11-14, 2003. Following a subsequent site visit to the disputed area and the filing of the parties' written final arguments thereafter, these consolidated matters were taken under advisement.

### Discussion

■■■ As with all these disputes, the best evidence of land ownership in American Samoa is "[a]ctual occupation with a claim of ownership." *Lualemana v. Atualevao*, 16 A.S.R.2d 34, 43 (Land & Titles Div. 1990). Possession of real property is the best evidence of ownership and carries with it the presumption of ownership. *Tuato`o v. Taua`a*, 17 A.S.R.2d 163, 166 (App. Div. 1990); *see also Muagututi`a v. Savea*, 4 A.S.R. 483, 485 (Trial Div. 1964); *Soliai v. Lagafua*, 2 A.S.R. 436, 438 (Trial Div. 1949); *Fa`ataliga v. Fano*, 2 A.S.R. 376, 337 (Trial Div. 1948). Indeed, in *Tufaga v. Liufau*, 1 A.S.R. at 186, the Liufau family's claim to land ownership, coupled with their actual possession of the disputed lands, prevailed over the Tufaga, Sao, and Maulupe families' mere claims to ownership based solely on tradition without any "solid foundation of fact."

### 1. *Findings*

In assessing both parties' opposing versions of the evidence, we find that Liufau's claim to ownership and actual occupation is better corroborated by credible independent sources. The disputed area today is in large part

a relatively flat area nestled up against the face of a sheer rock cliff that quite clearly was, as testified to by surveyor Lawrence French, the result of a massive quarrying and excavation operation in the past. The cliff drops suddenly from a hilly mountainous bush area that ascends steeply inland. Judging from the topography exhibits presented and from our observation of an area adjacent to and outside of the excavation cut, it appears that the excavated area had also descended to sea level following the surrounding contours of the hillside.

Chief Ponausuia Lusi Fale, who is seventy years of age and a life-long resident of Aua except for a fifteen year off-island stint with the United States Navy, testified that he was well familiar with the disputed site having grown up in the area, and having harvested crops, cut firewood, and worked on the disputed site with three of Liufau Tausolia's children Veni, Siela and Satini; that the land was known as *Leasi* and was owned by Liufau; and that his family is located immediately to the Pago side of *Leasi*. Ponausuia further testified that the area had greatly changed after the Navy Seabees had dynamited and excavated *Leasi* during the second world war, in order to provide fill for a repair base in Atu'u where the canneries are presently located. Ponausuia also testified that the main east-west highway that used to run along the shoreline was subsequently moved further inland such as to traverse *Leasi*. This relocation of the road occurred shortly after a fatal landslide that not only destroyed certain structures used by the Mormon Church, but also killed the *faifeau* (pastor) and others including a relative of Chief Sao. Ponausuia placed the location of the then Mormon compound at between 50 to 100 feet from the location of Liufau Tanielu's present disputed construction site. According to Ponausuia, the slide did not affect *Leasi*.

Ponausuia's testimony regarding the excavation and the relocation of the main highway was corroborated by seventy-seven year old Chief Saoimanulua Solosolo ("Sao"). Sao, whose predecessor-in-title was a party to the 1903 case that awarded *Leasi* to Liufau, testified that he too was familiar with the disputed area which he knew to be Liufau's land *Leasi*. Additionally, Sao's testimony was in accord with Ponausuia's as to the location of the early Mormon Church compound, which he placed to the east of *Leasi* on an area of land he estimated to be about an acre. Sao also testified as to the occurrence of a severe landslide around 1944 that not only swept away the structures used by the Mormon Church, but also took the lives of his sister and others. Sao likewise affirmed that following the landslide, the coastal road was moved inland bisecting *Leasi*.

The documentary exhibits received into evidence further revealed that the Liufau family received compensation from the United States Government for crop and other property damage claims on *Leasi* caused by the war effort. From ASG's archives came corroborative proof

298

relating to property damage claims made and filed by Liufau Tausolia and Unutoa before the War Claims Commission. These exhibits attest to Liufau's claim for crop destruction, attributed to the "See Bees," on two acres of Liufau family land referred to as *Asi* and a 40 x 1600 square yard area of *Vaituliuta*. Liufau's testimony was that "Asi" and "Leasi" are one and the same reference, and that the land *Leasi* derived its name from Asi trees that grew on the elevated slopes of the land. Moreover, these war claims exhibits present and added dimension of credibility to Liufau's position over Tufaga's. The latter would have us believe that *Leasi's* seaward side boundary-line runs approximately atop the excavated area. If we accept this, then we must also accept that the war effort included some sort of defense activity up on "two acres" of steep, hilly and elevated terrain. We would also have to accept that the Liufau family had at least "two acres" of compensable food crops growing among the Asi forest on hillside. We find such a state of affairs to be unlikely.

Liufau further testified that the various six tracts of land awarded in the 1903-case were all connected, pointing out that two of these tracts, *Vaituliuta* and *Vaitulitai*, were located next to *Leasi,* with the latter two circumscribing what Tufaga now claims as *Feagai.* According to Liufau family history, they had long ago relinquished claim to *Feagai* following a grant of the land by Liufau Mativa to a female family member who haled from either Leone or Se`etaga. Liufau's father Unutoa had related to him that the relinquished area was surveyed by the Meredith family and that the area surveyed was less than an acre in size. With that family history, the Liufau family has left the Tufaga family's use of the circumscribed area undisturbed.

Liufau further testified that while growing up in the village during the 1950s, his family had fenced-in the excavated, and disputed, area for use as a piggery enclosure. He further testified that between the pig fence and the road, his family maintained their banana plantations while to the seaward side of the present highway, his grandmother Leutu had openly maintained a sugar cane grove for roof thatching and that subsequently, his father had authorized the building of the village's first longboat shed in the area. This testimony was not controverted.

By comparison, the Tufaga family's claim to the overlap area lacks any of the hallmarks of use and occupation, as was established for the Liufau family by independent credible testimony from elderly matai of the village and by documentary exhibits attesting to the Liufau family's assertion of ownership interests in dealings with the United States Government. Contrast Tagisiaali`i's opposing testimony on behalf of the Tufaga family, to Liufau's recollections of life growing up in the area. Unlike Liufau, Tagisiaali`i was not raised in the village of Aua.

Moreover, we find the Tufaga family's claim to the seaward side of the road, as reflected in their 1990 resurvey, to be tentative and uncertain; being rather deferential toward ASG that had thirteen years earlier, in 1977, unconditionally abandoned any claim to the area. Contrast the Liufau family's claim to this area; it has not only remained unequivocal throughout, but the claim is coupled with credible evidence of actual use and occupation.

■■■■ As cases have long established, a mere claim to land without accompanied use or occupation is insufficient to acquire title thereof. *Ilaoa v. Toilolo*, 1 A.S.R. 602, 604 (Trial Div. 1938); *Soliai*, 2 A.S.R. at 438. Like the 1903 case, we also find that Tufaga family's claim to the overlap is without "solid foundation of fact." *See Tufaga*, 1 A.S.R. at 186. What the credible independent corroborative evidence has shown with regards to the Tufaga family's interests is that they lie east of the disputed land area. As borne out by the testimony of village elders, the extent of the Tufaga family's use and occupation in the vicinity was concentrated outside of the overlap within an area approximating an acre. This Tufaga area was the early location of the Mormon Church in the village of Aua.

## Conclusions

On the foregoing, we are satisfied that the evidence preponderates in favor of the Liufau family's claim and, therefore, conclude that the disputed overlap area is a part of the land *Leasi*, belonging to the Liufau family. Title may be registered accordingly to the Liufau family.

It is so ordered.